IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOAN SUSAN WILSON,

                  Plaintiff,                  OPINION AND ORDER

v.

                                                             11-cv-414-wmc

CAROLYN W. COLVIN,
Acting Commissioner Social Security Administration,

                  Defendant.

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Joan Susan Wilson seeks reversal of the Commissioner's decision finding she is not disabled and, therefore, ineligible for Supplemental Security Income.

Wilson contends that the Administrative Law Judge erred in finding that she did not have severe mental, physical or combination of impairments at step two of his analysis. For the reasons set forth below, the court finds that the ALJ did not err and will affirm the Commissioner's decision.

## FACTS

**A. Background**

The following facts are drawn from the administrative record (AR):

Joan Susan Wilson was born on August 23, 1963, and completed the ninth grade. AR 53-54  She had worked as a dishwasher. AR 54.

On November 29, 2006, Wilson filed an application for supplemental security income asserting her disability began as of May 1, 2006 because of back problems and depression. AR 128. After the local disability agency denied Wilson's initial application and again upon reconsideration, she requested a hearing. On October 6, 2009, Administrative Law Judge

Stephen J. Ahlgren heard testimony from Wilson. AR 53-66. On November 24, 2009, the ALJ issued his decision, finding Wilson not disabled. AR 28-34. This decision became the final decision of the Commissioner on November 24, 2010, when the Appeals Council affirmed. AR 18-22.

**B. Medical Evidence**

On October 26, 2006, Dr. Bruce A. Polender examined Wilson. On examination, her reflexes in her lower extremities were symmetrical and active and straight leg testing was positive bilaterally at 30-45 degrees. He nevertheless diagnosed chronic low back pain. Wilson's lumbar spine x-rays, which showed only mild degenerative disc disease at the L4-5 level, seemed to confirm this. AR 211. Dr. Polender prescribed Relafen for Wilson, who stated that she could not afford physical therapy. AR 181.

That same day, October 26, 2006, Dr, Bruce A. Polender wrote a letter stating his opinion that Wilson would have a difficult time working because of her chronic pain and spasms. He also noted that any job requiring a lot of walking, bending, twisting or kneeling would be very difficult for Wilson, although Dr. Polender noted that medication and possibly physical therapy would help in the future. AR 179.

On February 19, 2007, Wilson again saw Dr. Polender, this time for severe dental pain. She also reported pain in her lower back, which would occasionally go down her left leg. AR 210.

Wilson returned to see Dr. Polender once more for low back pain on October 22, 2007. On November 26, 2007, Polender prescribed Tramadol, Vicodin and Relafen for Wilson's pain. Wilson returned to see Polender on January 24, 2008 reporting that she was

unable to afford Relafen and that she was in significant pain. AR 234. On June 26, 2008, Dr. Polender further opined that the amount of pain Wilson has been in since 2003 precludes her from regular employment except in a very sedentary job. AR 235. On December 4, 2008, Polender noted Wilson experienced continued back pain while taking Hydrocodone and MS Contin. AR 236.

On April 1, 2008, Dr. Polender submitted a Physical Residual Functional Capacity Questionnaire for Wilson stating that she had low back pain. He also concluded that she could walk three blocks, sit for 15 minutes at a time and stand for 10 minutes at a time, but that she could only sit for less than 2 hours in an eight-hour work day and stand or walk for less than two hours in an eight-hour work day. He further found that she could rarely lift less than 10 pounds and needed a cane to stand and walk. Finally, Dr. Polender opined that these limitations began in 2003. AR 228-32.

On August 4, 2009, Wilson returned to see Polender, but refused an exam. At that time, Polender advised that he would no longer be Wilson's physician. AR 258.

## C. Consulting Physicians

On January 24, 2007, state agency physician Michael Baumblatt, M.D., reviewed the medical evidence concerning Wilson's low back pain and determined she was not disabled. AR 70.

On August 13, 2007, John F. Berry, M.D., also evaluated Wilson's physical impairments. Dr. Berry noted that Wilson had reported chronic low back pain since a 2003 fall, which she reinjured in 2003, but did not seek medical attention for either injury. Eventually, Wilson was treated on October 26, 2006 for back pain. AR 223.

On examination, Dr. Berry found Wilson's movements were "stiff and cautious, with frequent sighs, inhalations and exclamations of pain." AR 224. In Berry's view, she also gave what appeared to be an exaggerated pain response to relatively light percussion and palpation over the lumbar area, as well as to her shoulders and hips. After also finding Wilson's gait was cautious, but symmetrical, Berry diagnosed chronic low back pain based on a combination of mild degenerative disc disease as documented by an x-ray, muscular pain and perhaps behavioral factors. AR 224. Dr. Berry, therefore, concluded that Wilson's ability to perform work functions may be limited by back pain "with heavy or repetitive bending, lifting, twisting, pushing or pulling or with prolonged maintenance of a single position." AR 225. On August 28, 2007, state agency physician Dar Muceno, M.D., agreed with Dr. Baumblatt's January 2007 determination. AR 71.

On January 24, 2007, state agency psychologist Roger Rattan completed a psychiatric review form for Wilson. AR 193. Rattan found no restrictions on her activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. AR 203. He also noted that the evidence does not establish the presence of the "C" criteria. AR 204. On September 6, 2007, state agency psychologist Keith Bauer affirmed Rattan's assessment. AR 226.

On June 26, 2007, Rebecca Angle, Ph.D., evaluated Wilson's mental status for the state disability agency. Wilson reported having a history of depressive symptoms but no symptoms for the last two or three years. Wilson did tell Angle that she was sad up to two days a week and was often irritable and tearful. AR 217. Angle concluded that Wilson had a

Major Depressive Disorder, Recurrent, Mild and a Global Assessment Functioning Score of 62.[1] AR 221.

**D. Hearing Testimony**

At the hearing, Wilson testified that she had a general equivalency diploma, but had not worked since 2006 due to pain in her back, legs and feet, as well as her hip sometimes "giv[ing] way." AR 54. Wilson testified that after injuring her back in a fall, she had difficulty sitting for more than five to ten minutes at a time. AR 55. Wilson also testified that she took Hydrocodone and morphine for the pain. AR 57.

In addition, Wilson testified that she had depression, needed help with bathing and household tasks, and was only able to lift five pounds. AR 59-63. Instead of using a cane as her doctor suggested Wilson just holds on to her boyfriend's arm in case she stumbles. AR 64-65.

At the time Wilson applied for benefits, she submitted a daily activities questionnaire indicating she cooked several meals a day, cleaned her home, babysat, did laundry and shopped as needed. AR 161-165.

---

[1] The Global Assessment Functioning scale reports a clinician's assessment of the individual's overall level of functioning. *Sims v. Barnhart*, 309 F.3d 424, 427 n. 5 (7th Cir. 2002). A GAF of 21-30 indicates inability to function in almost all areas; 31-40 indicates major impairment in several areas; 41-50 indicates serious symptoms; 51-60 indicates moderate symptoms; and 61-70 indicates mild symptoms. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (Text Revision).

**E.  Administrative Law Judge's Decision**

In reaching the conclusion that Wilson was not disabled, the ALJ performed the required five-step sequential analysis.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]  At step one, the ALJ found that Wilson had not engaged in substantial gainful activity since November 29, 2006, her application date.

At step two, however, the ALJ found that Wilson did not have a severe impairment or combination of impairments.  AR 30.  In reaching this result, the ALJ considered the credibility of Wilson's statements pursuant to 20 C.F.R. 404.1529 and 416.929 and Social Security Rulings 96-4p and 96-7p.  In light of contrary medical records concerning her back and the lack of treatment notes for depression and her daily activities, the ALJ found that Wilson's statements regarding her symptoms and limitations were not credible.  AR 31-32.

The ALJ also considered the treatment notes of Dr. Polender, Wilson's lumbar x-ray showing only mild degenerative disc disease at the L4-5 level.  Weighing the medical opinions concerning Wilson's physical impairment in the record, the ALJ gave significant weight to the January 2007 and August 2007 opinions of state agency physicians, both of whom concluded that Wilson's back condition did not constitute a severe impairment.  He also pointed to the mild diagnostic findings, as well as Wilson's unreliable subjective complaints.  AR 32.  Because it was based almost solely on Wilson's unreliable subjective complaints, and contrary

---

[2] Under this test, the administrative law judge sequentially considers: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).  The claimant bears the burden of proof in steps one through four.  *Id*.  If a claimant satisfies steps one through three, she is automatically found to be disabled;  if the claimant meets steps one and two, but not three, then she must satisfy step four; if claimant satisfies step four, the burden shifts to the Commissioner to prove that the claimant is capable of performing work in the national economy.  *Id.*

to other evidence, the ALJ gave no weight to Dr. Berry's opinion that Wilson's ability to perform work functions may be limited by back pain from repetitive bending, lifting, and twisting. AR 32. Finally, the administrative law judge gave only limited weight to Dr. Polender's opinion because it was based almost entirely on Wilson's subjective complaints and mild diagnostic findings. The administrative law judge concluded that Wilson did not have a severe physical impairment or combination of impairments. AR 32.

Turning to Wilson's reported depression, the ALJ gave significant weight to the state agency psychologists who found no mental limitations on her ability to work. He also concluded that Wilson did not have a severe mental impairment. AR 33.

Given her finding, the ALJ found Wilson did not have a severe impairment or combination of impairments and was not disabled. AR 33.

OPINION

The commissioner's findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, *id.*, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). When an administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ's decision denying benefits meets each of these requirements.

Wilson contends that the ALJ erred in finding that she did not have a severe impairment. An impairment or combination of impairments is not severe if it does not significantly limit (*i.e.*, has no more than a minimal effect on) a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 416.921(a); Social Security Ruling (SSR) 85-28. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, carrying out simple instructions, use of judgment, and dealing with changes in a routine work setting. See 20 C.F.R. § 416.921(b). In determining severity, the claimant's age, education, and work experience are not considered. *See id.* § 416.920(c). The burden is on the claimant to prove that her physical or mental impairments meet the threshold showing of severity. See *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). In this case, the ALJ found that Wilson had no limitations on her mental ability to do work based on the lack of mental health treatment notes and the state agency psychologists' opinions. This conclusion appears amply supported by substantial evidence in the record.

Next, the ALJ found that Wilson's back pain was not a severe impairment. He based this conclusion on state agency physicians' opinions from 2007. He also discounted the

2007 opinion of Dr. Berry, the state agency physician who examined Wilson, that Wilson's back condition might limit her ability to perform repetitive bending, lifting, twisting, pushing, pulling or prolonged maintenance of a single position because it was based on Wilson's subjective complaints. Also, he discounted the opinion of Wilson's treating physician, Dr. Polender, that her back condition would limit her ability to perform work because it appeared based only on Wilson's own, subjective complaints that the ALJ had already found incredible. In reaching his conclusion, the ALJ considered Wilson's daily activities and the objective medical findings

Wilson argues that the ALJ erred in discounting Dr. Polender's opinion concerning Wilson's work limitations. The Commissioner has established a regulatory framework that explains how an administrative law judge is to evaluate medical opinions, including opinions from state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, opinions from sources who have treated the plaintiff are entitled to more weight than non-treating sources, and opinions from sources who have examined the plaintiff are entitled to more weight than opinions from non-examining sources. 20 C.F.R. §§ 404.1527(d)(1) and (2), 416.927(d)(1) and (2). Other factors the administrative law judge should consider however, are the source's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion. *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6).

In addition, the ALJ "must explain in the decision" the weight given to the various medical opinions in the record. 20 C.F.R. §§ 404.1527(f)(2)(ii); 416.927(f)(2)(ii). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on

circumstances." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept it. *Id.*; 20 C.F.R. § 404.1527(d)(2). When, however, as here, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. *Id*. These factors include: the number of times the treating physician has examined the claimant; whether the physician is a specialist in the allegedly disabling condition; how consistent the physician's opinion is with the evidence as a whole; and other relevant factors. 20 C.F.R. § 404.1527(d)(2). [3]

An administrative law judge must also provide "good reasons" for the weight he gives a treating source opinion, *id*, and must base his decision on substantial evidence and not mere speculation. *White v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). An opinion of a non-examining physician is not sufficient by itself to provide evidence necessary to reject a treating physician's opinion. *Gudgel v. Barnhart*, 345 F. 3d 467, 470 (7th Cir. 2003).

Here, the ALJ gave sound reasons for rejecting the opinion of Wilson's so-called "treating" physician, Dr. Polender -- and a portion of the opinion of Dr. Berry, the state agency examining physician -- that Wilson's back condition limited her ability to work. First, the ALJ makes an express finding that Wilson's pain was exaggerated. The ALJ pointed to the consultative examiner's report noting that "the claimant appeared to give an exaggerated pain response to relatively light percussion over the lumbar area, and even with manipulation of some joints, for example shoulders and hips, not directly related to her back pain

---

[3] In *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011), the court of appeals reaffirmed this standard.

problem." AR 32. In his report, Dr. Berry similarly noted that Wilson "exaggerate[ed] her response to pain." (*Id.*) Such evidence is substantial and supports the ALJ's finding that Wilson's pain does not satisfy Step 2. Indeed, the weeding out of exaggerated pain would be what Step 2 was designed to do – *i.e.*, to screen out groundless claims, so the limited resources of the state can concentrate on those disability claims of deserving merit.

Second, the ALJ supported his decision by relying on the mild diagnostic findings in the record. While these findings established some level of impairment, they did not rise to the level that is considered 'severe' for the purposes of the statute under Step 2. The ALJ's reliance on Drs. Baumblatt, Muceno and Berry provide ample evidence to support this conclusion.

Third, and most telling, even Wilson's purported treating physician Dr. Polendar, who credited her pain in a 2008 RFC questionnaire, later appears to have had his own concerns about Wilson' symptoms. Specifically, by August 19, 2009, Dr. Polender noted that she was unwilling to "undergo" physical tests, among others. The ALJ noted this in the decision and further stated that Dr. Polender recommended that she find a "different physician." AR 32.

Finally, although there was evidence that Wilson was treated after the state agency physicians gave their opinions that Wilson did not have a severe impairment, there is no objective medical evidence after 2007 concerning Wilson's back condition. Therefore, the ALJ acted within his discretion in giving significant weight to the more recent opinions of the state agency physicians.[4]

---

[4] Wilson argues that because the ALJ ignored her prescriptions for pain medication, the ALJ erred at Step 2. Cases supporting this argument were cited in reply briefing. Notwithstanding this, the district court cases cited by Wilson are from jurisdictions outside the Seventh Circuit. With respect to one of the cases, it is unclear as to what extent strong pain medication was relevant to Step 2 analysis. Indeed, the court held that, ultimately, the burden is on the "claimant to satisfy the fact finder that

Given that a district court cannot reconsider facts, re-weigh the evidence, or otherwise substitute its own judgment for that of the administrative law judge, there is little choice but to remand in these circumstances. *Clifford* 227 F.3d at 869. And because Wilson has not met her burden to show that she has a severe physical or mental impairment, the court will affirm the commissioner's decision.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Joan Susan Wilson's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 14th day of April, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

the alleged pain is real and of disabling severity." *Purnell v. Astrue*, 662 F.Supp.2d 402, 410 (E.D.Pa.2009). Even if this case was binding on the court, given that there is evidence of exaggerated pain (by at least two sources), the ALJ was free to give less emphasis to pain medication in in this case. Moreover, in light of evidence from the treating physician that Wilson see another physician after August 2009, this brings into question whether the alleged pain was real and of disabling severity.